McKinney, J.,
delivered the opinion of the Court.
The plaintiff in error was convicted upon a charge of selling liquor to a slave, and was sentenced hy the Court to pay a fine of $50, and to suffer four months imprisonment in the county jail of Rutherford, and de- ■ dared incapable of ever hereafter obtaining a license for the sale of spirituous liquors in Rutherford county.
Several exceptions are urged against the conviction. Eirst: It is insisted that the facts proved on the trial do not make a case under sec. 4865'of the Code. That section is as follows :
“ Any person who sells, loans, or delivers to any slave, except for his owner or master, and then only in such owner or master’s presence, or upon his written order, any liquor, &c., * * * is guilty of a misdemeanor ; and shall be fined not less than fifty dollars, *182 and imprisoned in the county jail at the discretion of the Court.”
Brown was a grocery keeper in the town of Mur-freesboro’, and being suspected of selling liquor to slaves, a plan was concerted for his detection. At an early hour in the morning, before daylight, one of the owners of the slave and another person, gave the slave an empty flask and a dime, and the owner directed him to go to Brown’s grocery and get a dime’s worth of liquor. The slave proceeded to the back door of the grocery, knocked, and was admitted by Brown, and immediately came out with the flask full of spirituous liquor. The owner and person in company with him, followed the slave, and took a position behind a fence within three or four feet of the back door of the grocery; where, unperceived by Brown, they could distinctly see, and did see him, open the door and admit the slave — heard him speak to the slave — and saw him let the slave come out with the flask of liquor. These facts are proved by the person who accompanied the owner. The defence is, that if this were not an unlawful conspiracy, and therefore inadmissible as evidence to ground a conviction upon, it was, at least, a sale of liquor to the slave “in the master’s presence,” and consequently no violation of the law. As this point has been gravely made, we suppose it ought to be answered; and the answer is easy. Although, in a certain sense, the master was present, yet he was not present in the sense of the law. The law contemplates a visible presence of the master — such a presence as necessarily implies a knowledge of, and assent to the act of selling the liquor to the slave. It is the master’s assent, express or implied, that furnishes the *183 only legal justification of tlie act; and the facts of tliis case directly negative and exclude- the idea of such assent.
2d. It is insisted that the Court erred in pronouncing judgment of incapacity to obtain a license in future, because it is not averred in' the presentment that the defendant was a licensed grocery keeper. This was not necessary. We have repeatedly held, that it is sufficien to warrant such judgment, if the fact appears in evidence on the trial, or is otherwise satisfactorily established, before rendition of the judgment.
3d. It is argued that the Court erred in not basing the judgment on section -2678 of the Code — which prescribes a milder punishment for such an offence. The offences defined in the two sections referred to, however similar, are not the same; and, of course, the conviction, whether upon the one section or the other, must be followed by the prescribed punishment.
Judgment affirmed.